**FARM BUREAU TOWN AND COUNTRY INSURANCE COMPANY OF MISSOURI, Respondent**

v.

**Robert THRELKELD, et al., Appellants.**

**No. 19460.**

Missouri Court of Appeals, Southern District, Division Two.

March 30, 1995.

D. Patrick Sweeney and Michael P. Mergen, Hall, Ansley, Rodgers & Condry, Springfield, and H. Lynn Henry, West Plains, for appellants.

David J. Moen, Carson & Coil, P.C., Jefferson City, for respondent.

CHARLES B. BLACKMAR, Senior Judge.

Appellants Morgan County Feeders, Inc., and Agri–Tech, Inc. filed suit against Appellants Robert and Patsy Threlkeld and others in the United States District Court for the Northern District of Indiana, seeking damages for the alleged conversion by the Threlkelds of several hundred cattle at locations in Indiana and Michigan. The Threlkelds tendered defense of the action to the Respondent, Farm Bureau Town and Country Insurance Company of Missouri, which offered to defend the suit with reservation of rights but disclaimed coverage. This offer was refused and Farm Bureau filed suit in the court below against the several Appellants seeking a declaratory judgment that it was not obliged to defend the Indiana federal suit. The trial judge found that there was no coverage, accompanying his ruling with a helpful and well-considered opinion, supplemented following request for reconsideration. We believe that he correctly ruled the case and affirm.

The Threlkelds were in the business of farming and raising cattle in Howell and Oregon Counties in Missouri. Commencing in 1988, they entered into a contract with one Herman Miller, who was to place calves on farms in Indiana for feeding until they

reached a specified weight. Most of the cattle were purchased in Indiana and Michigan by Steve Western, the Threlkelds' agent, but, at the beginning of the operation, Robert Threlkeld took 100 to 250 calves from Missouri to Indiana and these also were placed by Miller. During the entire operation Western and Miller placed approximately 2,650 calves for the Threlkeld operation. When the calves placed by Miller reached the desired size, 95 percent of them were transferred to a sale barn in Topeka, Indiana, rented by the Threlkelds, where the Threlkelds reacquired ownership of the calves. While the operation was ongoing, Western took 14 bulls and 12 Holstein cows to the Threlkelds' home in Missouri. At the end of the operation, 114 cattle were transported from the Indiana farms to the Threlkelds' premises in Missouri.

Appellant Agri–Tech, Inc. also used Miller to place calves on farms for feeding, and during the operation, placed a total of 2,250. Appellant Morgan Country Feeders, Inc. had a financing arrangement with Agri–Tech, Inc. There were heavy death losses and only 1,200 calves were delivered to Agri–Tech, Inc. In late 1989, Agri–Tech, Inc. demanded the return of certain calves which, they charged, belonged to them and were obtained by the Threlkelds from Miller. When satisfaction was not forthcoming, suit was filed in the Indiana federal court.

The Threlkelds were covered by a "protector policy" and an "umbrella policy", which provide public liability and other coverage in accordance with their express language. We do not need to consider the terms of the latter because, for the coverage here in issue, it simply augments the policy limits of the protector. The protector policy is not easy to study. It consists of fourteen pages of boiler plate followed by two pages of "options" for which coverage may be purchased. There follows three "information pages", which describe the premises covered by the policy. Even though the policies are prolix, we do not consider them to be ambiguous. The boiler plate excludes coverage for "bodily injury or property damage arising out of business pursuits of an insured," and also for "bodily injury or property damage arising

out of any premises owned, rented or controlled by an insured which is not an insured premises." The Threlkelds, however, elected Option L, which provides that "Business as defined on page 2 of the policy does not include farming." The "information page" specifically states that coverage under Option L is limited to the described premises. The Appellants do not argue that the policies provide floating public liability coverage, but seek to show that the Indiana project was an incident of the Missouri farming operation.

"Insured premises" is basically defined in the boiler plate. Section 5(a) of the definitions relates to a "family dwelling" described in the Information, while Section 5(b) has to do with a "secondary residence". Section 5(b) consists of six subsections. Those pertinent include:

1. The other premises listed in the Information Page;

. . . . .

6. Any premises you use in connection with the location described on the Information Page, approaches and access ways immediately adjoining the insured premises.

Option L expands the definition of the insured premises in the boiler plate by adding two additional items to subsection (b). Item 8 reads as follows:

All premises you lease or rent for farming purposes when located in the state of Missouri. *You must contact us to provide for rented or leased land located outside the state of Missouri.* [Emphasis supplied.]

Option M, which the Threlkelds did not elect, is entitled "Farm Related Business". It would have provided coverage for "a specified business ... shown on the information page."

The information pages list only insured premises in Howell and Oregon Counties of Missouri. The Appellants argue that the operations in Indiana with calves placed on farms by Herman Miller were "premises [the insured] use in connection with the location described on the Information Page". In support of this argument, they point out (1) that some calves were transported from Missouri

to Indiana at the beginning of the operation with Herman Miller; (2) that as many as 114 cattle were transported to the Threlkeld premises in Missouri at the end of the operation; and (3) that the Threlkelds supervised the Herman Miller operation from their home in Missouri and kept all records of the operation in Missouri.

The trial court rejected this contention, observing (1) that item 6 in the definition of "Insured Premises" contains limiting language restricting "premises you use in connection with the location described on the Information Page" to "approaches and access ways immediately adjoining the insured premises", which would hardly contemplate operations in Indiana; (2) that the Information Page expressly provides that "You must contact us to provide coverage for rented or leased land located outside the State of Missouri"; and (3) that the Threlkelds did not elect Option M for "Farm Related Business", which would apparently provide them with coverage for the Indiana operation, but would have required the payment of an additional premium.

We agree with the trial court. This is not an instance of deferring to a finding of fact. We conclude, after full review, that Judge Dunlap's resolution of the legal issues is sound, and the Appellants' evidence of relationship between the Missouri and Indiana operations is not sufficient to bring the latter within the coverage. From the only facts brought forth in opposition to the motion for summary judgment, no fact-finder, whether court or jury, could make the findings necessary for coverage to attach.

The Appellants cite *Roese Contracting Corporation, Inc. v. Zgliczynski*, 97 Mich. App. 199, 293 N.W.2d 763 (1980), in which the court found that the transportation of concrete from a farm to assist in the maintenance of a marina two and one-half miles away was a "necessary and incidental operation" relating to the marina, so as to fall within the policy language. The fact situation is far different from the one before us. The Appellants' other citations enunciate familiar maxims that all portions of a written instrument are to be read together, and that ambiguities are to be resolved in favor of coverage. We do not believe that the policy is ambiguous. Rather, we consider that the coverage has been clearly defined.

The holding is supported by cases which recognize the right of an insurer to define the coverage of a policy, especially when additional coverage is available at the price of increased premiums. *Universal Towing Company v. Hartford Fire Insurance Company*, 297 F.Supp. 1290 (E.D.Mo.1969) found that coverage of a policy limited to the insured's terminals did not include a terminal owned by a third party whose anchor fleet was serviced by the insured. In *Dorre v. Country Mutual Insurance Company*, 48 Ill. App.3d 880, 6 Ill.Dec. 782, 363 N.E.2d 464 (1977), the court held that coverage did not extend to premises which the insured failed to list in the policy declaration. In *Farm Bureau Mutual Insurance Company v. Sandbulte*, 302 N.W.2d 104 (Iowa 1981), the court determined that a vehicle travelling from an insured farm to another insured farm eight and one-half miles away was not using "ways immediately adjoining" insured premises.

The Respondent properly raised other contentions which would indicate affirmance. It raised the question, among others, whether a contract to insure against liability for conversion was contrary to public policy. Our conclusion as to the "insured premises" requirements is sufficient to support the judgment, and we need not discuss these additional questions. We express no opinion as to the trial court's rulings of the additional points.

The declaratory judgment in favor of the insurer is affirmed.

GARRISON, P.J., and CROW, J., concur.